(Cuyahoga County Common Pleas.)

PHILIPS v. THE AMMON-STEVENS CO. et al.

---

*Fraudulent transfer by insolvent corporation to prefer creditors—When held general assignment for benefit of all creditors—Attachment of property fraudulently conveyed by one creditor no prior lien.*

Where a corporation, wholly insolvent, disposes of all of its property and thus ceases further to pursue the objects of its creation, and such disposition of its property was made to some of its creditors and stockholders in preference to its other creditors and stockholders, such transaction will be declared fraudulent, at the suit of any creditor, under sec. 6344, Rev. Stat., and will then be declared a general assignment in favor of and in trust for all creditors. And where one creditor has attached part of the property so fraudulently disposed of to some preferred creditor, such attachment, after the conveyance has been declared fraudulent and void, will not give such attaching creditor a prior lien as against other creditors, but all the property so fraudulently conveyed will be held in trust for all creditors alike.

(Decided Aug. 19, 1895.)

---

NOBLE, J.

In this case there is first a motion for distribution by John Menke, an attaching creditor of the defendants. On June 14, 1894, a receiver was appointed for the defendants on application of the plaintiff. On June 13, 1893, John Menke, a creditor of the defendants, attached, among other

things belonging to the defendants, certain books of accounts—accounts and evidences of indebtedness in an action on that day commenced by him in this court against the defendant the Ammon-Stevens Co. The court subsequently sustained the attachment. No receiver was appointed in Menke's action to take possession of the company's account books and evidences of indebtedness, as provided in section 5540 of the Revised Statutes.

The receiver appointed in this case, however, on the following day did take possession of them under the court's order, it being stipulated that the receiver appointed should so do, and should proceed to collect the same without prejudice, however, to Menke's lien. The receiver has collected about $3,000, and now Mr. Menke asks that his judgment of $910, with interest from September 24, 1894, be paid out of it. Second, the receiver files a motion asking for an order allowing him to pay Menke. Third, E. P. Bassett & Sons file an answer and cross-petition, setting up, substantially, that they are creditors of The Ammon-Stevens Co.; that in December, 1892, Ammon-Stevens & Co. was a firm composed of A. F. Ammon, A. J. Stevens and I. P. Lamson; that they each of them were insolvent, except I. P. Lamson; that their debts exceed their assets by $20,000; that I. P. Lamson had also endorsed firm paper to a large amount; that for the purpose of defrauding creditors and to relieve Lamson from personal liability, N. S.. Calhoun, J. G. Jennings, Jr., and A. C. Caskey organized a corporation known as The Ammon-Stevens Co.; that Ammon subscribed for 200 shares, Stevens 100, Lamson 98, N. S. Calhoun 1, and J. G. Jennings 1; that they paid nothing on their subscriptions, and voted the entire corporate stock to be issued to Ammon, Stevens and Lamson in full payment for the assets of Ammon-Stevens & Co.

They further say that shortly after this transaction paper guaranteed by Lamson was taken up, and corporation paper susbtituted, Lamson becoming guarantor thereon, and other firm debts were renewed by giving corporation paper on which Lamson was not personally liable; and still other firm debts were paid up, by incurring fresh debts by the corporation, this going on until June, 1894, when the debts of the corporation exceeded its assets $100,000; that $32,000 of this was due to the Union National Bank, and $13,000 to Caskey & Calhoun, and Lamson had guaranteed both. Then, to secure Lamson an undue advantage, and to prefer Caskey & Calhoun, they allege that Lamson, Jennings, Stevens and Calhoun as directors transferred to Lamson good accounts amounting to $50,000 and over, for the pretended consideration of $45,000, and with this the Union National Bank and Caskey & Calhoun were satisfied.

Then it is alleged they borrowed from J. H. Sessions (who was closely connected with Lamson and knew all about the business, and was managing officer of the bank which held the claims) $32,000, and paid their debts, and gave Sessions a note for the amount due on demand. Judgment was entered up on it, and the property of the corporation levied upon. On this same day, in June, 1894, the directors, without Ammon's knowledge and to further relieve Lamson, sold large quantities of goods at less than cost, and paid other debts which Lamson had guaranteed. This was the last act of the corporation.

They say this whole scheme was fraudulent and void as against the creditors, and operated under the statute as an assignment for their benefit; that thereafter Menke attached said property as a creditor, and they claim he could not thereby secure any preference, on the ground that these previous acts constituted, under the statutes, an assignment for the benefit of all creditors; and they ask that the attachment of Menke be dissolved, and other relief.

To this Menke demurs

Let us first consider the demurrer. Menke claims that while it may be true that these allegations, if sustained, operate as an assignment of the property of the company for the benefit of all its creditors, it is not true that it affects the accounts attached by Menke and collected by the receiver, and part of the proceeds of which, he now wants. He claims that the particular accounts collected by the receiver were never assigned; that they were the property of the company at the time the attachment was made, and were subject to that kind of legal process just as any property would be at any time, and that the mere fact that the company had acted fraudulently and had attempted to swindle creditors and prefer its own stockholders, cannot affect the right of a creditor to attach the company's property. It is not alleged or claimed that Menke was a party to any fraud, or that he did not act in entirely good faith, merely taking advantage of the statutory provisions relating to attachments to secure this property.

Counsel contend that he is in the position of a diligent creditor, and that our Supreme Court certainly recognizes and approves that class of creditors, and says that they shall receive their reward; and that he should not be deprived of the advantage he has thus gained honestly, without any sort of collusion or fraud, simply because the failing debtor corporation committed fraudulent acts, and such acts as section 6344, Rev. Stat., provides shall amount to a general assignments for the benefit of all creditors. Section 6344 provides that all transfers, conveyances or assignments made by a debtor or procured by him with intent to hinder, delay or defraud creditors, shall be declared void at the suit of any creditor; and after any such transfer, conveyance or assignment shall have been declared void by a court of competent jurisdiction, the probate court shall appoint an administrator who shall recover possession of all property so transferred and conveyed or assigned, and shall administer the same for the benefit of all creditors.

It is claimed by Menke that the cross-petition of Bassett & Sons does not disclose the fact that the particular accounts seized under Menke's attachment and turned over to the receiver, were so transferred. The allegation in regard to Menke, however, is that he attached "said property." "Said property," refers to the property of the corporation turned over to Lamson & Sessions which is mentioned in the cross-petition; and that property, so far as the accounts are concerned, was as therein stated "good accounts receivable, owned "by said pretended corporation, to the amount of $55,000.00, for the pretended consideration of $45,000, by which said indebtedness to the Union National Bank and to Caskey & Calhoun was satisfied."

Did this include the accounts attached? The allegation, by strict construction, does include it, although Menke's counsel claim in argument that the accounts attached by him were not the same. This issue, however, should be raised by answer. By demurring he admits these allegations of the cross-petition to be true, and on its hearing the court must so consider them

Possibly also the question might have been made on the motion for distribution, but there is no question of that character therein raised, and no affidavit is presented in support of the motion. So that the court is bound to take it as true that the accounts attached by Menke are the same as transferred by the Company to Lamson & Sessions.

Now, if this is so, there seems to be very little doubt as to what the Court should do. There can be no reasonable doubt as to the holding of the courts of our own state as to what constitutes such fraudulent sale or transfer as to bring it within the provision of the section of the Revised Statutes referred to. The last deliverance of our Supreme Court is in the 46 Ohio St 501, Rouse v. the Merchants' National Bank of Cincinnati, and

the doctrine is very clearly stated that the property of a corporation is a trust fund for the payment of its debts, and that after insolvency, and the objects of its creation are no longer pursued, the directors having custody of the property become trustees for the creditors, and this relation forbids any discrimination between beneficiaries.    They cannot by pledge or transfer or mortgage create a valid preference of one creditor over another.    It would be wholly inconsistent with their trust relation for directors to apply corporate property to some of its debts, leaving others entirely unprovided for, and particularly so if they select debts for which part of the stockholders are liable, not only as stockholders but as individuals, leaving other stockholders to respond to their full statutory liabiltiy.

Applying this reasoning to the case at bar, why do not the allegations of the cross-petition come squarely within it?    Take in connection with the case mentioned the rulings of the Supreme Court in 11 Ohio St. 685, Conrad & Bro. et al., v. Pancost & Co. et al.    There the Conrads, partners in trade, were insolvent, and in July, 1860, to protect their property from being sacrificed at Zanesville and Columbus, transferred their store in Zanesville to one Cassell, and in Columbus to one Hart, men without means, who, to aid them in their purpose bought the property and afterwards undertook to pay for it.    In the following month sundry attachments were begun by creditors of the Conrads, and the goods sold thereunder.    In the following November Pancost & Co. et al., also creditors of the Conrads, commenced suit against them and the attachment creditors, setting up the above facts, and that the attachment creditors claimed the exclusive right to the property. They asserted their right to an equal prorata share on the ground that Cassell and Hart, by reason of these facts, simply became trustees for the creditors of the Conrads by virtue of the statute respecting fraudulent sales and assignments, and they asked an injunction against the attachment creditors from taking the funds.    The Supreme Court held that the Conrads' transaction was fraudulent, and that their assignment to Cassell and Hart was really in trust for the benefit of all the creditors, and inured to the benefit of each in proportion to the amount of their respective claims. In view of these decisions and with the facts in the latter case certainly very similar to those set forth in the answer and cross-petition of Bassett & Son, how can the court hold otherwise than that these allegations if the cross-petition do make a case which comes squarely within the statute referred to?    And if they do, it must follow that when Menke made his attachment on these accounts, he found them burdened with all that a violation of the provisions of section 6344 Rev. Stat., entails, and that his rights thereunder must be subject to that burden.    This being the opinion of the court, the demurrer must be overruled, and it becomes unnecessary to pass on the motions for distribution.

*Wilcox & Friend*, for Menke.

*Caskey & Calhoun,* for Ammon-Stevens Co.

*White, Johnson & McCaslin* and *Gilbert & Hill,* for Bassett & Co.